**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                       Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>                       Plaintiff,<br><br>      v.<br><br>TREMONT GROUP HOLDINGS, INC., et al.,<br><br>                       Defendants. | 11-cv-07330-GBD<br>ECF CASE |

**XL FUND APPELLANTS' OPPOSITION TO THE TREMONT DEFENDANTS'/APPELLEES' MOTION TO DISMISS THE APPEAL**

KEVIN M. HARR, ESQ.
406 Broadway Street #380H
Santa Monica, California 90210
Telephone: (323) 877-6490
Facsimile: (323) 370-6800
Email: kharr@rozcolaw.com

S. BENJAMIN ROZWOOD, ESQ.
ROZWOOD & CO., APC
503 North Linden Drive
Beverly Hills, CA 90210
Telephone: (310) 246-1451
Facsimile: (310) 246-9756
Email: brozwood@rozcolaw.com

Attorney for Appellants Phoenix Lake Partners, Inc.,
Lakeview Investment, LP and 2005 Tomchin Family Charitable Trust

TABLE OF CONTENTS

Page

I. SUMMARY OF OPPOSITION ........................................................................ 1
II. BACKGROUND FACTS ................................................................................. 7
III. APPLICABLE LAW ...................................................................................... 10
IV. XL FUND APPELLANTS HAVE STANDING TO APPEAL ..................... 12
V. CONCLUSION ............................................................................................... 16

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Bank of Marin v. England*,
　385 U.S. 99 (1966).................................................................................................... 10

*In re Amatex Corp.*,
　755 F.2d 1034 (3d Cir. 1985)...................................................................................…10

*In re Colony Hill Assoc.*,
　111 F. 3d 269 (2d Cir. 1997)....................................................................................…11

*In re DBSD N. Am., Inc.*,
　634 F.3d 79 (2d Cir. 2010) ......................................................................................…11

*In re Drahn*,
　405 B.R. 470 (N.D. Iowa Bankr. 2009) .....................................................................…3

*In re Drexel Burnham Lambert Group, Inc.*,
　960 F.2d 285 (2d Cir. 1992)....................................................................................... 11

*In re Enron Corp.*,
　333 B.R. 205 (S.D.N.Y. Bankr. 2005) ....................................................................... 15

*In re Heating Oil Partners, LP*,
　422 Fed. Appx. 15, 2011 WL 1838720 (2d Cir. May 16, 2011) ................... 11

*In re Ionosphere Clubs, Inc.*,
　156 B.R. 414 (S.D.N.Y. 1993)..................................................................................…10

*In re PWS Holding Corp.*,
　228 F.3d 224 (3d Cir. 2000)......................................................................................... 5

*In re Ralar Distributors, Inc.*,
　4 F.3d 62 (1st Cir. 1993)............................................................................................…3

*In re Refco Inc.*,
　505 F.3d 109 (2d Cir. 2007)...............................................................................…3, 5,12

*In re Stone Barn Manhattan LLC*,
　405 B.R. 68, 74 (S.D.N.Y. Bankr. 2009).............................................................. 12-13

*In re Telesphere Com., Inc.*,
　179 B.R. 544 (N.D. Ill. Bankr. 1994) ......................................................................... 3

*In re Teligent, Inc.*,
    640 F.3d 53 (2d Cir. 2011) ...11

*In re Texaco Inc.*,
    84 B.R. 893 (S.D.N.Y. Bankr. 1988) ...10, 15

*In re Wild West World, L.L.C.*,
    Adv. No. 07-5365 (D. Kan. Bankr. Oct. 1, 2008) ...3

*Matter of AWECO, Inc.*,
    725 F.2d 293 (7th Cir. 1984) ...13

*Misty Mgmt. Corp. v. Lockwood*,
    539 F. 2d 1205 (9th Cir. 1976) ...3

*Picard v. Katz*,
    --- F. Supp. 2d ----, 2011 WL 4448638 (S.D.N.Y. Sept. 27, 2011) ...2

*Pepper v. Litton*,
    308 U.S. 295 (1939) ...15

*Shropshire, Woodliff Co. v. Bush*,
    204 U.S. 186 (1907) ...15

*Sprint Com. Co., L.P. v. APCC Serv., Inc.*,
    554 U.S. 269, 128 S. Ct. 2531 (2008) ...15

*Wilson v. Brooks Supermarket, Inc.*,
    667 F.2d 1244 (5th Cir. 1982) ...15

## Statutes

11 U.S.C §550(d) ...3

11 U.S.C §502(h) ...*passim*

11 U.S.C §1109(b) ...10

Appellants Phoenix Lake Partners, Inc., Lakeview Investment, LP and 2005 Tomchin Family Charitable Trust ("XL Fund Appellants") hereby oppose the motion of the Tremont Companies[1] (*see* ECF 4-5) for an order dismissing the above-captioned appeal and the related joinders of the Parent Companies[2] (*see* ECF 8, 12), the Settling Funds[3] (*see* ECF 6) and the Trustee[4] (*see* ECF 14).

## I.  SUMMARY OF OPPOSITION

XL Fund Appellants appeal from a final order of the Bankruptcy Court (*see* ECF 1) approving and adopting the settlement (the "Settlement") of the Trustee's avoidance transfer claims against the Tremont Companies, the Parent Companies and the Settling Funds in one of more than 900 avoidance actions related to the substantially consolidated liquidation of BLMIS and the Madoff estate.

---

[1] The "Tremont Companies are defendants-appellees Tremont Group Holdings, Inc. ("Tremont Group"), Tremont Partners, Inc. ("Tremont Partners") and Tremont (Bermuda) Limited ("Tremont Bermuda").

[2] The "Parent Defendants" are defendants-appellees Oppenheimer Acquisition Corporation ("Oppenheimer"), MassMutual Holding LLC ("MassMutual Holding") and Massachusetts Mutual Life Insurance Company ("MassMutual").

[3] The "Settling Funds" are the Rye Funds and the Tremont Funds. The "Rye Funds" are defendants-appellees Rye Select Broad Market Fund, L.P. ("Market Fund"), Rye Select Broad Market Portfolio Limited ("Portfolio Limited"), Rye Select Broad Market Insurance Fund, L.P. ("Rye Insurance"), Rye Select Broad Market Prime Fund, L.P. ("Prime Fund") and Rye Select Broad Market XL Fund, L.P. ("XL Fund"). The "Tremont Funds" are defendants-appellees Tremont Arbitrage Fund, L.P., Tremont Arbitrage Fund Ireland, Tremont Emerging Markets Fund - Ireland, Tremont Equity Fund - Ireland, Tremont International Insurance Fund, L.P., Tremont Long/Short Equity Fund, L.P., Tremont Market Neutral Fund, L.P., Tremont Market Neutral Fund II, L.P., Tremont Market Neutral Fund Limited, Tremont Opportunity Fund Limited, Tremont Opportunity Fund II, L.P., Tremont Opportunity Fund III, L.P., Rye Select Equities Fund, Tremont Multi Manager Fund and LifeInvest Opportunity Fund LDC.

[4] The "Trustee" is plaintiff-appellee Irving H. Picard, as trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the estate of Bernard L. Madoff ("Madoff").

XL Fund Appellants are limited partners of Rye Select Broad Market XL Fund, L.P. ("XL Fund"), one of the Settling Funds. In contrast to the other Rye Funds, XL Fund was never a customer of BLMIS. Predominantly all of XL Fund's capital was either transferred to three large multinational banks (HSBC ABN/Royal Bank and Fortis)[5], pursuant to structured investment contracts known as "swaps" or delivered to the Tremont Companies and the Parent Companies as management fees and/or dividends. The losses suffered by the limited partners that invested in XL Fund are estimated to exceed $400-$450 million.

Although XL Fund was never a BLMIS customer, the Trustee asserted avoidance transfer claims against XL Fund based upon allegations that XL Fund was a "subsequent transferee" of avoidable transfers from BLMIS to two Rye Funds that were BLMIS customers—Prime Fund and Market Fund. For the two-year period preceding the filing of the BLMIS liquidation, the Trustee sought to recover from XL Fund $203 million of allegedly avoidable transfers from Prime Fund to XL Fund, and $35 million of such transfers from Market Fund to XL Fund.[6] *See* Adv No. 10-05310-BRL Docket ("BK ECF") 1 ¶¶277-79.

---

5 "HSBC" is HSBC Bank plc and HSBC Bank USA, N.A., two of the principal defendants in *Picard v. HSBC Bank plc*, S.D.N.Y. Bankr. Adv. Pro. No. 09-01364, and HSBC USA Inc. "ABN/Royal Bank" is ABN AMRO Bank N.V. (presently known as The Royal Bank of Scotland, N.V.), principal defendant in *Picard v. ABN/Royal Bank*, S.D.N.Y. Bankr. Adv. Pro. No. 10-05354. "Fortis" is ABN AMRO Bank (Ireland) Ltd. (formerly known as Fortis Prime Fund Solutions Bank (Ireland) Limited), a principal defendant in *Picard v. Fortis*, S.D.N.Y. Bankr. Adv. Pro. No. 10-05355.

6 For the six-year avoidance period, the Trustee has sought to recover from XL Fund $285 million of allegedly avoidable subsequent transfers from Prime Fund to XL Fund, and $46.7 million of such transfers from Market Fund to XL Fund. However, in *Picard v. Katz*,

On July 25, 2011, the Trustee entered into a settlement (the "Settlement") resolving the Trustee's avoidance claims against the defendants-appellees, including XL Fund. *See* BK ECF 17-1. In satisfaction of the Trustee's avoidance claims against XL Fund, XL Fund's limited partners will contribute approximately $34.6 million of cash and/or securities currently held in XL Fund accounts. *See* BK ECF 24-1 ¶7. The remainder of the Trustee's avoidance claims against XL Fund (approximately $200 million) will be satisfied from a portion of the proceeds of a $657 million loan that XL Fund and the other Rye Funds jointly obtained. *See id.* ¶6. Pursuant to 28 U.S.C. §502(h), the Trustee's recovery of cash in satisfaction of avoidance transfer claims against XL Fund, as a subsequent transferee, entitles XL Fund and its limited partners to an allowed claim against the BLMIS estate (and creditor status).[7]

---

--- F. Supp. 2d ----, 2011 WL 4448638 (S.D.N.Y. Sept. 27, 2011), Judge Rakoff ruled that the Trustee may not avoid any transfers beyond the two-year avoidance period.

[7] *See, e.g., In re Refco Inc.*, 505 F.3d 109, 113 n.4 (2d Cir. 2007) ("11 U.S.C. § 502(h) permits a party to file a claim against the bankruptcy estate upon surrender of a preference"); *see also In re Ralar Distributors, Inc.*, 4 F.3d 62, 66 n.2 (1st Cir. 1993) ("If [a subsequent transferee] were required to disgorge, it could file a proof of claim for the amount of the avoided transfer, [pursuant to] §502(h), §502(d), which would be entitled to a pro rata distribution from the [transferor-debtor] estate"); *Misty Mgmt. Corp. v. Lockwood*, 539 F. 2d 1205, 1214 (9th Cir. 1976) ("a transferee guilty of fraudulent behavior may nevertheless prove a claim against the bankrupt estate, once he returns the fraudulently conveyed property to the estate"); *In re Drahn*, 405 B.R. 470, 474 (N.D. Iowa Bankr. 2009) ("If the trustee successfully avoids a transfer, the transferee may assert a claim against the estate as an unsecured creditor," pursuant to § 502(h)); *In re Telesphere Com., Inc.*, 179 B.R. 544, 553-554 (N.D. Ill. Bankr. 1994) ("Avoidance of a preference result[ing] in a return of transferred property to the estate" gives rise to an allowed claim pursuant to 11 U.S.C. § 502(h)); *In re Wild West World, L.L.C.*, Adv. No. 07-5365 (D. Kan. Bankr. Oct. 1, 2008) ("Section 502(h) … gives a transferee from whom property is recovered by the exercise of avoiding powers, an allowed unsecured claim").

The Trustee does not dispute that a transferee's satisfaction of an avoidance claim entitles the transferee to an allowed claim pursuant to §502(h); nor does the bankruptcy court. The Settlement provides for $800 million of additional allowed claims against the BLMIS estate, *see* BK ECF 17-1 ¶5, resulting from the $343 million of cash to be contributed by the limited partners of the 19 Settling Funds and the $657 of loan proceeds to be secured and otherwise obtained by XL Fund and the other four Rye Funds. The problem is the additional allowed claims pursuant to §502(h) are not given to the Settling Funds that will contribute to the $1 billion payment. Despite the substantial contributions made by the limited partners of each of the 19 Settling Funds, the Settlement provides that all payments from the BLMIS estate in connection with the $800 million of additional allowed claims under §502(h) must be allocated to just two Settling Funds—Market Fund and Portfolio Ltd. *Id*.

The allocation of all additional allowed claims against the BLMIS estate under §502(h) to only Market Fund and Portfolio Ltd. is indefensible. The limited partners of these two Settling Funds are contributing only a small fraction of the $343 million cash component of the required $1 billion settlement payment, and the Trustee's two-year avoidance claims against these two Settling Funds is less than $383 million of the $909 million of aggregate two-year avoidance claims.

One may speculate about the reasons for this lopsided and plainly inequitable allocation of §502(h) credits to only two of 19 Settling Funds. Collectively, HSBC, ABN/Royal Bank and Fortis own approximately 60% of Market Fund and Portfolio Limited. Under the governing documents for those two Settling Funds, the three banks

decide upon and control the general partner of each fund. Because the general partners are beholden to the three banks and because it is in their own pecuniary interests to maintain control of the two funds, it is not surprising that all of §502(h) credits allowed under the Settlement are allocated to only the two Settling Funds in which the banks invested. But this is not permissible under the law. *See supra* note 7.

Because the $800 million of additional allowed claims under §502(h) was not given to all of the Settling Funds which contributed to the $1 billion settlement payment, XL Fund Appellants objected to the Trustee's motion to approve the Settlement. *See* BK ECF 24, 36-37. XL Fund Appellants also objected to the Settlement because the Trustee released the Tremont Companies, the Parent Companies and the three banks (HSBC, ABN/Royal Bank and Fortis) without receiving any consideration from any of them for the BLMIS estate, and because the record was inadequate to determine whether would be an appropriate allocation of §502(h) credits and whether the Settlement was actually in the best interests of the BLMIS estate. *See id.*

In the Bankruptcy Court's Order approving the Settlement, Judge Lifland ruled that XL Fund Appellants has no standing to object to the Settlement, *see* ECF 1-1, based on the rule that an objector whose interests are "purely derivative" of a creditor has no standing to object to the creditor's settlement of its claims against the debtor's estate. The Tremont Companies' motion to dismiss and the related joinders are based on the same rule. *See* ECF 5. Appellees argue that XL Fund Appellants lack standing because XL Fund Appellants are not sufficiently "aggrieved" by the Settlement.

- 5 -

Appellees' argument has no merit.  XL Fund Appellants have standing to object to the Bankruptcy Court's Order approving the Settlement because the Order 'directly and adversely affect[s] [them] pecuniarily."  In contrast to the objectors in *In re Refco Inc.*, 505 F.3d 109 (2d Cir. 2007), XL Fund Appellants are not claiming grievances that are only "derivative" of XL Fund.  On August 19, 2011, Judge Griesa entered a final judgment (the "Civil Judgment") approving a class action and derivative action settlement in *In re Tremont Securities Law, State Law & Insurance Litigation*, 08 Civ. 11117 (TPG) (the "Tremont Civil Action").  BK ECF 33-1.  Under the terms of the Civil Judgment, Appellants and the other limited partners of XL Fund obtained a judicially approved assignment of (i) all assets currently held in XL Fund accounts, and (ii) all rights that XL Fund may have to receive any distributions from the BLMIS estate for allowed claims under §502(h) or otherwise.  As judicially approved assignees of XL Fund's rights to and interests in any §502(h) credits arising from the $34.6 million of cash to be contributed by the limited partners of XL Fund and from the loan proceeds to be applied to satisfy approximately $200 million of avoidance claims, Appellants clearly have standing to object to the Settlement insofar as it directly deprives them of their rightful pecuniary benefit from those contributions.  Because they have a direct interest in distributions from the BLMIS estate with respect to their judicially assigned §502(h) credits, Appellants also have standing to object to the Settlement. Appellants contend, for example, that the Settlement is not in the interests of the BLMIS estate and that it unfairly favors and unjustly enriches  the Tremont

Companies, the Parent Defendants and the three banks (HSBC, ABN/Royal Bank and Fortis) at the expense of the customers and creditors of BLMIS.

## II. BACKGROUND FACTS

On December 11, 2008, federal agents arrested Madoff for operating the largest Ponzi scheme in United States history. Thousands of innocent investors were duped, and the net losses of BLMIS customers alone exceed $17 billion. According to the Trustee, Madoff's fraud was not accomplished alone. The size and scope of Madoff's fraud necessitated the cooperation and substantial assistance of many individuals and institutions who either knowingly or with willful blindness participated in the fraud. Assisting Madoff's scheme was a highly profitable venture. Hedge fund managers and financial institutions, such as the Tremont Companies, capitalized on Madoff's fraud, profiting handsomely from Madoff's fictitious returns and obtaining hundreds of millions of dollars in management, performance, administrative and other fees and dividends for themselves and their parent companies by doing little more than funneling investors' money to BLMIS and Madoff.

The Settlement approved by the Bankruptcy Court involves some of the most significant facilitators of Madoff's fraudulent scheme: (i) the Tremont Companies and the Parent Companies, which are the same defendants the Trustee alleges "substantially aided, enabled and helped to sustain the massive Ponzi scheme orchestrated by … Madoff, in order to reap financial windfalls from the clients' investments," *see* BK ECF 1 ¶1; (ii) HSBC; (iii) ABN/Royal Bank; and (iv) Fortis. *See supra* notes 5-7. Although all of these entities enjoy the benefits of a complete release under the

Settlement, none of them is contributing any money to fund the $1 billion Settlement.[8] Instead, the entire burden of that payment falls on the innocent investors who entrusted their savings to these players. Certainly nothing is fair about this.

Because these investors did not deposit their savings directly with BLMIS, the Trustee similarly disregards them. Indeed, paragraph 5c of the Settlement do so far as to state that "the BLMIS estate, SIPC, the Trustee, the Trustee's agents, attorneys, accountants, and representatives … shall have no responsibility to insure the proper or correct payments to any investor, shareholder, member and/or partner in any fund managed by any of the Tremont Defendants." *See* BK ECF 17-1 ¶5. Nonetheless, claiming that the Settlement "will greatly benefit the victims of the Madoff Ponzi scheme," the Trustee sought and obtained the Bankruptcy Court's approval of the Settlement. *See* BK ECF 17 (Mem.) at 4-5.

The Trustee predicated his motion for approval of the Settlement upon the alleged benefit to the BLMIS estate resulting from the $1 billion cash settlement payment that the Settling Funds must make to the BLMIS estate to satisfy the Trustee's avoidance transfer claims against the Settling Funds. In exchange for the $1 billion settlement payment to be funded entirely by the limited partners and shareholders of

---

[8] Although the Proposed Settlement collectively obligates the Tremont Defendants to make the $1 billion settlement payment, the Tremont Companies and the Parent Defendants do not appear to be contributing any money to fund the settlement. Rather, the $1 billion cash payment required under the Proposed Settlement will be fully funded using (i) approximately $260.5 million of remaining investor capital held by XL LP, Prime Fund, Market Fund, Rye Insurance and the domestic Tremont Funds ; (ii) approximately $82.5 million of remaining investor capital held by Portfolio Limited and the offshore Tremont Funds; and (iii) approximately $657 million that the Settling Funds have borrowed to satisfy the settlement cash payment obligation.

the Settling Funds, the Trustee agreed to release all avoidance transfer claims against all settling defendants (and, by operation of law, HSBC, ABN/Royal Bank and Fortis). *See* BK ECF 17-1 ¶8.  The Trustee also agreed that the Tremont Companies (who, according to the Trustee's allegations, materially aided and assisted Madoff's fraudulent scheme) would be entrusted to allocate the $800 million of additional allowed claims resulting under 11 U.S.C. §502(h), allowing the Tremont Companies to divert 100% of the additional allowed claims to two funds that are 60% owned by the three banks. *See id*. ¶5

Appellees claim that the allocation of the $800 million credit has yet to be determined.  They claim that, in connection with a recently approved Civil Judgment involving the Tremont Defendants and their investors, Judge Griesa will have discretion to reallocate the §502(h) allowed claims among the Settling Funds.  None of this is true.  Any plan of allocation that may be implemented by Judge Griesa is constrained by the express terms of the Settlement, which Judge Lifland approved without modification.  For example, all $800 million of additional allowed claims "shall be allocated fairly and equitably by the Tremont Defendants between Broad Market Fund and Portfolio Limited."  BK ECF 17-1 ¶5.  Similarly, with respect the total allowed claims, "the Tremont Defendants covenant that they will cause all payments received from the Trustee in respect of the Total Allowed Claims Amount to be fairly and equitably allocated among Broad Market Fund, Portfolio Limited, Rye Insurance, and their respective partners and/or investors."  *Id.* ¶5c  Nowhere in the Settlement is any provision permitting the Tremont Defendants, Judge Griesa, or

anyone else to reallocate any BLMIS payments among the Settling Funds in violation of the express terms of paragraphs 5 and 5c of the Settlement. Because this allocation is fundamentally unfair to Appellants and the other limited partners of XL Fund and contrary to the law governing §502(h), Appellants' objections should have been sustained.

### III.   APPLICABLE LAW

In bankruptcy proceedings, "[t]here is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction." *Bank of Marin v. England*, 385 U.S. 99, 103 (1966); *see also In re Texaco Inc.*, 84 B.R. 893, 902 (S.D.N.Y. Bankr. 1988) ("Equitable considerations should be preeminent in the exercise of bankruptcy jurisdiction"). Accordingly, "[i]n approving [bankruptcy] compromises[,] the court must act independently and for the benefit of ***all*** parties in interest … even where parties in interest are silent and even where a party in interest has engaged in conduct that might amount to a waiver of objections in another context." *Texaco*, 84 B.R. at 901 (emphasis added).

"Although the term 'party in interest' is not defined by the Bankruptcy Code or Rules, courts construe its meaning broadly 'to insure fair representation of all constituencies impacted in any significant way….'" *In re Stone Barn Manhattan LLC*, 405 B.R. 68, 74 (S.D.N.Y. Bankr. 2009). "[T]he term … is not limited by the small list of examples in [11 U.S.C.] §1109(b)." *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985). "Whether a party qualifies as a 'party in interest' is determined on a case-by-case basis, taking into consideration whether that party has a 'sufficient

- 10 -

stake' in the outcome of that proceeding, which can include having a pecuniary interest directly affected by the bankruptcy proceeding." *In re Heating Oil Partners, LP*, 422 Fed. Appx. 15, 2011 WL 1838720, *2 (2d Cir. May 16, 2011); *see also In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 849-50 (S.D.N.Y. 1989) (Lifland, J.) ("party in interest" "ought to be construed broadly" "on an *ad hoc* basis" to "ensure[] fair representation of all claimants"; any person with a "sufficient stake in the proceeding" should be heard). "The general theory behind the section is that anyone holding a direct financial stake in the outcome of the case should have an opportunity ... to participate in the adjudication of any issue that may ultimately shape the disposition of his or her interest." *In re Teligent, Inc.*, 640 F.3d 53, 60 (2d Cir. 2011).

Standing to appeal a bankruptcy court ruling is similarly determined by one's stake in the matter. Although "[t]he current Bankruptcy Code prescribes no limits on standing beyond those implicit in Article III of the United States Constitution," "for practical reasons" the Second Circuit has "adopted the general rule" that to have standing to challenge a bankruptcy court ruling, one "must be 'a person aggrieved'— a person 'directly and adversely affected pecuniarily' by the challenged order of the bankruptcy court." *See In re DBSD N. Am., Inc.*, 634 F.3d 79, 88-89 (2d Cir. 2010); *see also In re Colony Hill Assoc.*, 111 F. 3d 269, 273-74 (2d Cir. 1997). On appeal from a ruling of the bankruptcy court, a District Court "review[s] *de novo* the bankruptcy court's view of the principles governing who may contest a settlement as a party in interest." *Teligent*, 640 F.3d at 57.

## IV.   XL FUND APPELLANTS HAVE STANDING TO APPEAL

XL Fund Appellants are aggrieved by the Settlement and therefore have standing to pursue this appeal.  Under the Settlement, Appellants and the other limited partners of XL Fund will contribute substantial sums towards the $1 billion cash settlement payment.  Pursuant to 11 U.S.C. §502(h), Appellants and that other limited partners of XL Fund are entitled to an allowed claim against the BLMIS estate commensurate with their contributions.  Yet, under the Settlement, they are precluded from obtaining any party of the $800 million credit provided under §502(h).  Instead, the entire §502(h) credit is allocated to just two of the Settling Funds—Market Fund and Portfolio Limited—to be distributed only to those funds' limited partners.

Appellees argue that XL Fund Appellants lack standing to object to the Proposed Settlement because XL Fund Appellants are not BLMIS customers and have not approved SIPA claims.  Because XL Fund Appellants currently have no claim against the BLMIS estate, Appellees argue that XL Fund Appellants do not qualify as "parties in interest."   Appellees argument relies heavily, if not entirely, upon the decision in *In re Refco Inc.*, 505 F.3d 109 (2d Cir. 2007), in which the Second Circuit ruled that the Bankruptcy Court was not obligated to consider the objections of a group of shareholders who were complaining that a proposed settlement between the trustee of the debtor and a creditor company (Sphinx) was unfair to them as shareholders of Sphinx.  The Second Circuit affirmed the Bankruptcy Court's ruling that the shareholders "lacked standing to object because they were not a 'party in interest' under §1109(b)."  505 F.3d at 114-17.  Because the settlement adversely

affected the shareholders' economic interests *only indirectly*, "as equity holders in Sphinx," the Court of Appeals concluded that acceptance of their theory of standing "would read[] into §1109(b) a degree of separation from the primary parties in a bankruptcy proceeding that [the Court was] unwilling to countenance." *Id*. at 117.

*Refco* is clearly distinguishable from this case. The shareholders in *Refco* did not possess any rights or interests distinct from those of the creditor company in which they had invested. *See* 505 F.3d at 117. Hence, the shareholders had no ***direct*** interest in the claims that the creditor company and the trustee had settled and the shareholders were not "aggrieved persons." In contrast, XL Fund Appellants have a direct stake in the any BLMIS recoveries that may be allocated to XL Fund pursuant to the Civil Settlement. XL Fund Appellants' direct pecuniary interests arise by virtue the judicially approved assignment of XL Fund's current assets and any BLMIS recoveries to the limited partners of XL Fund.[9]

On August 19, 2011, the United States District Court for the Southern District of New York, Case No. 08-CIV-11117 (TPG), entered the Civil Judgment (1) approving a settlement (the "Civil Settlement") as set forth in a stipulation dated February 25, 2011 ("Settlement Stip."); and (2) directing the "Settling Parties and their counsel ... to

---

[9] Appellees' other authorities are also distinguishable. *In re Comcoach Corp.*, 698 F.2d 571 (2d Cir. 1983), merely states the rule that "party-in-interest standing under § 1109(b) does not arise if a party seeks to assert some right that is purely derivative of another party's rights in the bankruptcy proceeding." *Refco*, 505 F.3d at 117 nn.9-10. *Southern Blvd., Inc. v. Martin Paint Stores*, 207 B.R. 57 (S.D.N.Y. 1997), concerned the efforts of a retail tenant objecting to the assumption of an unexpired lease. In re Gucci, 126 F.3d 380 (2d Cir. 1998), concerned the standing of unsuccessful bidders at bankruptcy estate sale.

implement and consummate the Settlement in accordance with its terms and conditions[.]" *See* BK ECF 33-1 §12; *see also id.* §10 ("The Settling Parties are directed to consummate the Settlement in accordance with the terms and conditions of the Stipulation."). The Settlement terms, incorporated into the Judgment, provide Appellants with a direct interest in all amounts approved for distribution by the BLMIS estate to XL Fund. Any such BLMIS distributions to which these two funds (or any other Tremont fund) otherwise would be entitled must be transferred directly to a so-called "Fund Distribution Account" ("FDA") to be managed by a specific escrow agent approved by the District Court. *See* BK ECF 33-2 §2.20 (Remaining Fund Proceeds), §2.21 ("SIPC Recovery") and §2.8; and *see* BK ECF 33-1 §26.

The Judgment defines the FDA as "the account for distribution of the Remaining Fund Proceeds to the Fund Distribution Claimants" (see BK ECF 33-2 §1.19); the term "Remaining Fund Proceeds" includes "all amounts remaining in the Rye Funds ... after resolution of the Settling Funds' claims in or relating to the Madoff Trustee Proceedings ...." (*id.*, §1.50); *id.*, §§2.20-2.21 (setting forth what goes into the FDA, including "100% of any SIPC Recovery") and §§2.8-2.9 (addressing "Remaining Tremont Funds" in greater detail). The term "Fund Distribution Claimant" includes "any limited partner ... in any of the Settling Funds ... as of December 11, 2008, each of which shall be entitled to receive a disbursement from the Fund Distribution Account[.]" *See id.*, §1.52 (emphasis added); BK ECF 33-2 §2.8 (FDA). XL Fund is one of eight "Rye Funds," all of which are included within the defined term "Settling Funds" (along with nine other Tremont-managed funds). *Id.*, §§1.52, 1.57 and 1.65.

Thus, XL Fund Appellants are entitled under the Judgment to share in the FDA monies attributable to their respective funds and, thus, have a direct financial interest therein. *See id.*, §2.23 (FDA "will be disbursed to Fund Distribution Claimants … pursuant to a separate plan of allocation to be approved by the Court"). In effect, the Judgment reflects a judicially-approved assignment in accordance with the Settlement terms.

As judicially approved assignees of XL Fund's current assets and any BLMIS recoveries, XL Fund Appellants plainly have a direct financial stake entitling them to object to the Settlement insofar as the Settlement would unfairly deny the limited partners of XL Fund a portion of the $800 million of "Additional Allowed Claims" provided under the Settlement pursuant to 11 U.S.C. §502(h). Indeed, it is long-settled that the assignee of a creditor in a bankruptcy proceeding stands in the shoes of the assignor. *See*, *e.g.*, *Sprint Com. Co., L.P. v. APCC Serv., Inc.*, 554 U.S. 269, 128 S. Ct. 2531, 2535-37 (2008); *Shropshire, Woodliff Co. v. Bush*, 204 U.S. 186, 189 (1907); *Wilson v. Brooks Supermarket, Inc.*, 667 F.2d 1244, 1247 (5th Cir. 1982); *In re Enron Corp.*, 333 B.R. 205, 223-225 (S.D.N.Y. Bankr. 2005).

In any event, "[i]n approving compromises [in bankruptcy cases,] the court must act independently and for the benefit of all parties in interest … even where parties in interest are silent and even where a party in interest has engaged in conduct that might amount to a waiver of objections in another context." *Texaco*, 84 B.R. at 901. "In the exercise of its equitable jurisdiction the bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate … [a]nd its duty so to do is especially

- 15 -

clear when the claim seeking allowance accrues to the benefit of" persons in a fiduciary position." *Pepper v. Litton*, 308 U.S. 295, 308-09 (1939).  In this case, the equities of the case warrant the Court's consideration of XL Fund Appellants' objections, if not for the interests of themselves and other limited partners of XL Fund, then for XL Fund itself.

## V.   CONCLUSION

For the foregoing reasons, XL Fund Appellants have standing to pursue their appeal, and accordingly the Court should deny the Tremont Companies' motion to dismiss.

DATED:  November 3, 2011                Respectfully submitted,

/s/  Kevin M. Harr
_____
KEVIN M. HARR

Attorney for Appellants Phoenix Lake Partners, Inc.; Lakeview Investment, LP; and 2005 Tomchin Family Charitable Trust