UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>BERNARD MADOFF INVESTMENT SECURITIES LLC,<br><br>                              Debtor. | |
| IRVING PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>                              Plaintiff,<br><br>            v.<br><br>TREMONT GROUP HOLDINGS, INC., et al.,<br><br>                              Defendants. | Case Number  11-cv-07330-GBD<br>ECF Case |

**BRIEF OF DEFENDANTS-APPELLEES MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY AND MASSMUTUAL HOLDING LLC**

Kenneth I. Schacter
BINGHAM MCCUTCHEN LLP
399 Park Avenue
New York, NY  10022-4689
212.705.7000
kenneth.schacter@bingham.com

Joseph L. Kociubes (*pro hac vice*)
Carol E. Head*
BINGHAM MCCUTCHEN LLP
One Federal Street
Boston, MA 02110
617.951.8000
joe.kociubes@bingham.com
carol.head@bingham.com
*pro hac vice admission pending*

Attorneys for Defendants-Appellees Massachusetts Mutual Life Insurance Company and MassMutual Holding LLC

TABLE OF CONTENTS

Page

I. BASIS OF APPELLATE JURISDICTION ........................................................................ 1
II. ISSUES PRESENTED FOR REVIEW ............................................................................... 1
III. STATEMENT OF THE CASE............................................................................................ 1
IV. ARGUMENT...................................................................................................................... 3
    A. STANDARD OF REVIEW .................................................................................... 3
    B. APPELLANTS LACK STANDING ....................................................................... 3
    C. THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN APPROVING THE SETTLEMENT AS IN THE BEST INTERESTS OF THE ESTATE.................................................................................................... 4
V. CONCLUSION................................................................................................................... 8

A/74599349.4

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*In re Delta Airlines, Inc.*,
    374 B.R. 516 (S.D.N.Y. 2007) ................................................................................................3

*In re Liu*,
    166 F.3d 1200 (2d Cir. 1998) ..................................................................................................3

*In re Refco Inc.*,
    2006 WL 3409088 ................................................................................................................3, 4

*In re Refco Inc.*,
    505 F.3d 109 (2d Cir. 2007) .....................................................................................................4

*In re Victory Markets, Inc.*,
    195 B.R. 9 (N.D.N.Y. 1996) .....................................................................................................4

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*,
    412 F.3d 418 (2d Cir. 2005) .....................................................................................................6

*O'Rourke v. United States.*,
    587 F.3d 537 (2d Cir. 2009) .....................................................................................................6

*Picard v. Katz*,
    __ F. Supp. 2d __, 2011 WL 4448638 (S.D.N.Y. Sept. 27, 2011) ...........................................5

*Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
    390 U.S. 414 (1968) ..................................................................................................................4

**STATUTES**

11 U.S.C. § 502(h) ..................................................................................................................2, 5, 7

11 U.S.C. § 1109(b) ........................................................................................................................3

28 U.S.C. § 158(a)(1) .....................................................................................................................1

**OTHER AUTHORITIES**

Fed. R. Bankr. P. Rule 9019 .......................................................................................................3, 4

A/74599349.4

Defendants-Appellees MassMutual Holding LLC and Massachusetts Mutual Life Insurance Company (the "MassMutual Appellees") submit this brief in opposition to the appeal from the Bankruptcy Court's (Lifland, J.) approval of a $1.025 billion settlement with the Madoff estate. Appellants are neither parties to the settlement nor creditors to the estate. Rather, they are limited partners of two settling funds that are unhappy with the amount of money they, as limited partners, stand to gain through the settlement to which their funds have agreed. Respectfully, Appellants lack standing to object to the settlement, and, more importantly, nothing they say alters the fact that the Bankruptcy Court did not abuse its discretion in determining that the $1 billion settlement was in the best interest of the estate.

The MassMutual Appellees, settling defendants and corporate great-grandparents of the general partner of the settling funds, submit this short brief, adopting arguments made by other Appellees, but highlighting points of significance to the settlement's treatment of remote defendants like the MassMutual Appellees, which had no interaction with Madoff at all, but have nevertheless contributed to the settlement.

### I. BASIS OF APPELLATE JURISDICTION

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a)(1). Appellants, however, lack the requisite standing to invoke this Court's jurisdiction.

### II. ISSUES PRESENTED FOR REVIEW

1. Whether Appellants lack standing both to object to the settlement and to bring this appeal?

2. Whether the Bankruptcy Court abused its discretion in approving this $1 billion settlement as in the best interests of the Madoff estate?

### III. STATEMENT OF THE CASE

This is an appeal from the Bankruptcy Court's approval of a $1.025 billion settlement ("Settlement") of an adversary proceeding brought by Irving Picard, the trustee ("Trustee") of the estate of Bernard L. Madoff Investment Securities ("BLMIS" or "estate") in the pending BLMIS SIPA proceeding, In re Bernard L. Madoff Investment Securities LLC, No. 08-01789-

BRL (Bankr. S.D.N.Y.).  *See Picard v. Tremont Group Holdings, Inc. et al.*, Adv. Pro. No. 10-05310-BRL (the "Adversary Proceeding").  On December 7, 2010, the Trustee brought claims against certain hedge funds (the "Funds"), their managers, Tremont Partners, Inc. and Tremont (Bermuda) Limited, their parent company, Tremont Group Holdings, Inc. and Tremont's former CEO, Robert I. Schulman (collectively, the "Tremont Appellees").

The Trustee also sued Tremont Group Holdings, Inc.'s parent company, Oppenheimer Acquisition Corp. ("OAC"), and its parent, MassMutual Holding LLC.  MassMutual Holding LLC is a subsidiary holding company of Massachusetts Mutual Life Insurance Company, which was also named as a defendant.

Through the Adversary Proceeding, the Trustee sought to "claw back" cash allegedly transferred from BLMIS to the Funds prior to the commencement of BLMIS's proceedings.  The Trustee also alleged certain theories of recovery against the parent entities, including the MassMutual Appellees and OAC.  Complaint (Docket No. 1).[1]  Prior to the commencement of the Adversary Proceeding, a number of Funds had filed substantial customer claims with the Trustee.

The Settlement resolved all these claims by providing for the payment of $1.025 billion to the estate of BLMIS in respect of Tremont's avoidance claims.  In exchange, the Trustee and the bankruptcy court will allow three of the Funds' prepetition customer claims against the estate.  The Settlement thus includes allowance of both valid prepetition claims and a credit as allowed under 11 U.S.C. § 502(h) for the payment in respect of avoidance claims.  *See* Settlement Agreement (Docket No. 17-1).

After a hearing on September 22, 2011 (at which Appellants' counsel did not appear), the Bankruptcy Court allowed the Trustee's motion to approve the Settlement, finding it in the best

---

[1] References to "Docket No. __" are to docket entries in the Adversary Proceeding, No. 10-05310-BRL.

interests of the estate, and overruling Appellants' objections to the Settlement. (Docket No. 38.) That same day, the Bankruptcy Court issued a Bench Memorandum and Order Granting Trustee's Motion for Entry of Order Approving Settlement ("Order"). (Docket No. 38-1.)

Appellants are neither customers nor creditors of BLMIS.[2] Rather, Appellants are a group of limited partners of two settling Funds that do not have allowable claims: the Rye Select Broad Market XL Fund, L.P. and the Rye Select Broad Market Prime Fund, L.P.[3] Appellants include two hedge funds, Phoenix Lake Partners, L.P. and Lakeview Investment L.P., as well as two trusts and an individual investor.

## IV.   ARGUMENT

### A.   STANDARD OF REVIEW

"A bankruptcy court's finding pursuant to Rule 9019 that a settlement is reasonable is reviewed for abuse of discretion." *In re Delta Airlines, Inc.*, 374 B.R. 516, 522 (S.D.N.Y. 2007). Under this "extremely deferential[]" standard, a court's decision "should not be overturned unless its decision is manifestly erroneous and a clear abuse of discretion." *In re Liu*, 166 F.3d 1200, 1200 (2d Cir. 1998) (quoting *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y.1993)). An abuse of discretion occurs only if "no reasonable [person] could agree with the decision" to approve the settlement. *Delta Airlines*, 374 B.R. at 522.

### B.   APPELLANTS LACK STANDING

Appellants are limited partners in two settling funds. They are not customers or creditors of the estate and, thus, meet none of the requirements necessary to have standing to object to the Settlement, let alone appeal the Bankruptcy Court's Order. *See* 11 U.S.C. § 1109(b); *In re Refco*

---

[2] Appellants are Phoenix Lake Partners, L.P., Lakeview Investment, L.P., 2005 Tomchin Family Charitable Trust, Edward White, for himself and on behalf of White Trust dated May 3, 2002, and Rigdon O. Dees, III.

[3] Both the XL Fund and Prime Fund received releases pursuant to the Settlement. (*See* Docket No. 17-1.)

*Inc.*, 2006 WL 3409088, at **4, 6 (S.D.N.Y. Nov. 16, 2006), *aff'd*, 505 F.3d 109 (2d Cir. 2007). There was no abuse of discretion in the Bankruptcy Court's Order holding that Appellants lack standing. Order at 3. As standing is a prerequisite to the right to appeal, this deficiency alone provides cause to deny the appeal. *See, e.g., In re Victory Markets, Inc.*, 195 B.R. 9, 15 (N.D.N.Y. 1996) ("The [standing] rule is designed to streamline bankruptcy proceedings by denying appellate standing to the typically large number of parties whose interests are only indirectly affected by bankruptcy court orders.").

The MassMutual Appellees rely on and incorporate by reference the arguments of the other Appellees, as set forth in their briefs, in further support of their argument that the Court should affirm the Bankruptcy Court's ruling that Appellants lack standing.

### C. THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN APPROVING THE SETTLEMENT AS IN THE BEST INTERESTS OF THE ESTATE

The only issue before the Bankruptcy Court under Fed. R. Bankr. P. 9019 was whether the Settlement is fair *to the estate* and in the best interests *of the estate*. *See, e.g., Refco*, 505 F.3d at 119 ("[A] bankruptcy court's obligation is to determine whether a settlement is in the best interests of *the estate* …" (emphasis in original)). The Bankruptcy Court properly evaluated whether, in exchange for the releases to be granted, the total consideration received by the estate -- $1.025 billion -- came above the low end of the reasonableness range with regard to the group of claims released. *See, e.g., Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). In determining reasonableness, the Bankruptcy Court considered "a number of factors, including (i) the probability of success in the litigation; (ii) the difficulties associated with collection; (iii) the complexity of the litigation and attendant expense, inconvenience, and delay; and (iv) the paramount interests of creditors." Order at 1 (*citing Refco,* 2006 WL 3409088, at *7). The Bankruptcy Court noted that the Settlement "will enable the estate to immediately recover $1.025 billion for the eventual return to defrauded BLMIS customers." Order at 2. So long as the parties to the Settlement have actually and contractually bound themselves to its terms (which Appellants do not challenge), its fairness to

non-debtor parties is not a matter for the Bankruptcy Court's concern.

Ignoring the deferential standard of review that applies in this circuit, Appellants point to nothing that would remotely suggest that the Bankruptcy Court abused its discretion in approving this $1.025 billion Settlement. Instead, Appellants make two bald statements, neither of which is supported by the record before this Court: that the Settlement will dilute existing customer claims, and that neither the Trustee not the Bankruptcy Court considered the actual merits of the Trustee's claims and the effect the Settlement would have as to the merits of the Trustee's claims against other entities. *See* Appellants' Brief at 11-14.

The first point is quickly addressed, and arises from Appellants' deeply misleading characterization that a $1 billion avoidance settlement had secured $3 billion of dilutive allowed claims. Appellants' Brief at 13. The suggestion is false. The settling defendants include some funds that, victimized by the Madoff fraud and unable to recover all of their investment before the scheme collapsed, are "net losers." Those funds have combined losses of over $2 billion. As part of the Settlement, the Trustee will recognize the their claims as customers, and will recognize an increase in the amount of the proofs of claim by $800 million to account for the $1 billion payment being made. *See* Settlement Agreement, § 5 (Docket No. 17-1). The allowance of an additional claim for moneys paid in a preference settlement is pursuant to 11 U.S.C. § 502(h) ("a claim arising from the recovery of property under section … 550 … shall be allowed .. the same as if such claim had arisen before the date of the filing of the petition.").

The second assertion, that the Trustee did not pay attention to the merits of the claims, is not simply inaccurate -- he did -- but ironic. After the Settlement was reached, Judge Rakoff decided *Picard v. Katz*, __ F. Supp. 2d __, 2011 WL 4448638 (S.D.N.Y. Sept. 27, 2011), limiting the Trustee's ability to recover avoidance claims under state law. This development has only made the Settlement *more beneficial* to the estate, and brought into focus how greatly the estate would be injured were the Settlement vacated. But the suggestion is incorrect anyway, for the record shows that the Trustee and the Bankruptcy Court noted the complex nature of the claims and the risk of recovery, consistent with the "range of reasonableness" factors set forth

above.  *See, e.g.,* Trustee's Motion to Approve the Settlement (Docket No. 17) at ¶ 16 (explaining the Trustee's "comprehensive investigation of Settling Defendants' direct and indirect investments with BLMIS"); ¶ 17 ("After a review of the relevant records and a thorough and deliberate consideration of the uncertainty of risks inherent in all litigation, the Trustee, in the exercise of his business judgment, has determined that it is appropriate to reach a business resolution in this matter rather than proceed to litigation."); Order at 2, *citing* Affidavit of Irving Picard (Docket No. 17-6) ¶ 4 (describing the litigation as "protracted, costly, and uncertain" and explaining that "litigating the Avoiding Power Claims would undoubtedly be extremely complex, create significant delay, and would involve both litigation risk and difficulties associated with collection").  Appellants' arguments are simply inconsistent with the record.

Appellants also make a passing reference, in the "statement of issues presented" and "statement of the case" sections of their brief, to the effect that some settling defendants, including the MassMutual Appellees, are not contributing cash towards the Settlement, and argue that this calls into question the Bankruptcy Court's approval.  *See* Appellants' Brief at 3, 8. Appellants do not develop this issue anywhere in the argument section of their brief (*see id.* at 10-19), and have thus waived the argument on appeal.  *See O'Rourke v. United States*., 587 F.3d 537, 542 (2d Cir. 2009) (argument "not adequately raised in their opening brief" deemed waived); *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V*., 412 F.3d 418, 428 (2d Cir. 2005) ("[A]rguments not made in an appellant's opening brief are waived even if the appellant pursued those arguments in the district court or raised them in a reply brief.").

But the resolution of this issue would be academic in any event.  The question for the Bankruptcy Court was whether the estate's recovery is fair overall, and that court was not charged with looking at how the settlement is to be paid.  As the Bankruptcy Court correctly held,

> where, as here, the total settlement is fair and reasonable, "the court is not required to supervise how the defendants apportion liability for that compensation among themselves." *Becker v. Warner Commc'ns, Inc. (In re Warner Commc'ns Secs. Litig.)*, 798

>   F.2d 35, 37 (2d Cir. 1986). As such, "'the release of noncontributing defendants through a settlement agreement is no reason for disapproving the compromise.'" *Duban v. Diversified Mortg. Investors*, 87 F.R.D. 33, 40 (S.D.N.Y. 1980) (citation omitted). While couched in terms of the fairness and equability of the Settlement, this objection is merely an inter-defendant dispute regarding the Settling Defendants' division of responsibility for the settlement payments. If the Objectors have any issues to such apportionment between the settling parties, they should seek relief in accordance to the bylaws of their respective funds in the appropriate forum.

Order at 7.[4]

Appellants' argument that the XL Fund and Prime Fund should receive some benefit of the allowable claims under § 502(h) is wrong. *See* Appellants' Brief at 14-18. As the Bankruptcy Court observed, Appellants are not arguing about the best interest of the estate -- they are "contest[ing] the fairness of the settlement in light of their own financial interests." Order at 4. Whether Appellants can state a claim against their funds, asserting that they should not have entered into the Settlement without securing for Appellants the benefits they seek, is not a question presented by this Settlement. Here, there is no question that the settling defendants had authority to enter into the settlement agreement, and did so. Appellants' dispute, if there is one at all, lies between private parties -- Appellants and their funds. This disagreement had no bearing on the Bankruptcy Court's review of the fairness of the settlement.

In further support, MassMutual relies on and incorporates by reference the arguments of the other Appellees, as set forth in their briefs, demonstrating that the Court should affirm the Bankruptcy Court's approval of the Settlement.

---

[4] The Trustee's claims against MassMutual were based largely on theories of *alter ego*, unjust enrichment, and undeveloped notions that somehow Madoff customers would have claims against MassMutual. Such claims against a corporate great-grandparent were so tenuous that the Trustee could sensibly conclude that they added no settlement value.

## V.     CONCLUSION

For the foregoing reasons, Massachusetts Mutual Life Insurance Company and MassMutual Holding LLC respectfully request that the Court affirm the Bankruptcy Court's Order approving the Settlement.

Dated:  New York, New York
        November 21, 2011

BINGHAM MCCUTCHEN LLP

By: s/ Kenneth I. Schacter
    Kenneth I. Schacter
    399 Park Avenue
    New York, NY  10022-4689
    212.705.7000

    Joseph L. Kociubes (*pro hac vice*)
    joe.kociubes@bingham.com
    Carol E. Head*
    carol.head@bingham.com
    One Federal Street
    Boston, MA 02110
    617.951.8000
    *\*pro hac vice admission pending*

    *Attorneys for*
    *Massachusetts Mutual Life Insurance*
    *Company and MassMutual Holding*
    *LLC*

## 11 U.S.C. § 502. Allowance of claims or interests

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that —

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;

(2) such claim is for unmatured interest;

(3) if such claim is for a tax assessed against property of the estate, such claim exceeds the value of the interest of the estate in such property;

(4) if such claim is for services of an insider or attorney of the debtor, such claim exceeds the reasonable value of such services;

(5) such claim is for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under section 523(a)(5) of this title;

(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds —

(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of —

(i) the date of the filing of the petition; and

(ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus

(B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates;

(7) if such claim is the claim of an employee for damages resulting from the termination of an employment contract, such claim exceeds —

(A) the compensation provided by such contract, without acceleration, for one year following the earlier of —

(i) the date of the filing of the petition; or

(ii) the date on which the employer directed the employee to terminate, or such employee terminated, performance under such contract; plus

(B) any unpaid compensation due under such contract, without acceleration, on the earlier of such dates;

(8) such claim results from a reduction, due to late payment, in the amount of an otherwise applicable credit available to the debtor in connection with an employment tax on wages, salaries, or commissions earned from the debtor; or

(9) proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title or under the Federal Rules of Bankruptcy Procedure, except that a claim of a governmental unit shall be timely filed if it is filed before 180 days after the date of the order for relief or such later time as the Federal Rules of Bankruptcy Procedure may provide, and except that in a case under chapter 13, a claim of a governmental unit for a tax with respect to a return filed under section 1308 shall be timely if the claim is filed on or before the date that is 60 days after the date on which such return was filed as required.

(c) There shall be estimated for purpose of allowance under this section —

(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or

(2) any right to payment arising from a right to an equitable remedy for breach of performance.

(d) Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

(e) (1) Notwithstanding subsections (a), (b), and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that —

(A) such creditor's claim against the estate is disallowed;

(B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution; or

(C) such entity asserts a right of subrogation to the rights of such creditor under section 509 of this title.

(2) A claim for reimbursement or contribution of such an entity that becomes fixed after the commencement of the case shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) of this section, the same as if such claim had become fixed before the date of the filing of the petition.

(f) In an involuntary case, a claim arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee and the order for relief shall be determined as of the date such claim arises, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

(g) (1) A claim arising from the rejection, under section 365 of this title or under a plan under chapter 9, 11, 12, or 13 of this title, of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

(2) A claim for damages calculated in accordance with section 562 shall be allowed under subsection (a), (b), or (c), or disallowed under subsection (d) or (e), as if such claim had arisen before the date of the filing of the petition.

(h) A claim arising from the recovery of property under section 522, 550, or 553 of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

(i) A claim that does not arise until after the commencement of the case for a tax entitled to priority under section 507(a)(8) of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

(j) A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case. Reconsideration of a claim under this subsection does not affect the validity of any payment or transfer from the estate made to a holder of an allowed claim on account of such allowed claim that is not reconsidered, but if a reconsidered claim is allowed and is of the same class as such holder's claim, such holder may not receive any additional payment or transfer from the estate on account of such holder's allowed claim until the holder of such reconsidered and allowed claim receives payment on account of such claim proportionate in value to that already received by such other holder. This subsection does not alter or modify the trustee's right to recover from a creditor any excess payment or transfer made to such creditor.

(k) (1) The court, on the motion of the debtor and after a hearing, may reduce a claim filed under this section based in whole on an unsecured consumer debt by not more than 20 percent of the claim, if —

(A) the claim was filed by a creditor who unreasonably refused to negotiate a reasonable alternative repayment schedule proposed on behalf of the debtor by an approved nonprofit budget and credit counseling agency described in section 111;

(B) the offer of the debtor under subparagraph (A)—

(i) was made at least 60 days before the date of the filing of the petition; and

(ii) provided for payment of at least 60 percent of the amount of the debt over a period not to exceed the repayment period of the loan, or a reasonable extension thereof; and

(C) no part of the debt under the alternative repayment schedule is nondischargeable.

(2) The debtor shall have the burden of proving, by clear and convincing evidence, that —

  (A) the creditor unreasonably refused to consider the debtor's proposal; and

  (B) the proposed alternative repayment schedule was made prior to expiration of the 60-day period specified in paragraph (1)(B)(i).

  ( Pub.L. 95-598, Nov. 6, 1978, 92 Stat. 2579; Pub.L. 98-353, title III, Sec. 445, July 10, 1984, 98 Stat. 373; Pub.L. 99-554, title II, Sec. 257(j), 283(f), Oct. 27, 1986, 100 Stat. 3115, 3117; Pub.L. 103-394, title II, Sec. 213(a), title III, Sec. 304(h)(1), Oct. 22, 1994, 108 Stat. 4125, 4134; Pub.L. 109-8, title II, Sec. 201(a), title VII, Sec. 716(d), title IX, Sec. 910(b), Apr. 20, 2005, 119 Stat. 42, 130, 184. )