UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re: :
 :
BERNARD L. MADOFF INVESTMENT :
SECURITIES LLC, :
 :
                Debtor. :
 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
IRVING H. PICARD, Trustee for the :
Liquidation of Bernard L. Madoff Investment :
Securities LLC, :
 :
                Plaintiff, :   11-cv-7330 (GBD) (AJP)
 :   ECF Case
    - against - :   Electronically Filed
 :
TREMONT GROUP HOLDINGS, INC., et al., :
 :
                Defendants. :
 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**BRIEF OF THE TREMONT DEFENDANTS/APPELLEES**

                              Seth M. Schwartz
                              Jason C. Vigna
                              SKADDEN, ARPS, SLATE,
                                MEAGHER & FLOM LLP
                              Four Times Square
                              New York, New York 10036
                              (212) 735-3000

                              Attorneys for Defendants/Appellees
                                Tremont Group Holdings, Inc.,
                                Tremont Partners, Inc.,
                                Tremont (Bermuda) Limited
                                and Robert I. Schulman

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

STATEMENT OF THE ISSUES PRESENTED ....................................................................1

STANDARD OF APPELLATE REVIEW ..............................................................................1

SUMMARY OF ARGUMENT .................................................................................................2

STATEMENT OF THE CASE .................................................................................................3

      A.      Nature of the Case ............................................................................................3

      B.      Course of the Proceedings and Disposition in the Court Below ..................4

ARGUMENT ...............................................................................................................................6

I.     APPELLANTS LACK STANDING TO APPEAL AND TO OBJECT TO THE SETTLEMENT ..................................................................................................6

II.    THE BANKRUPTCY COURT PROPERLY OVERRULED APPELLANTS' OBJECTIONS AND APPROVED THE SETTLEMENT .......................................6

      A.      The Applicable Standards ................................................................................6

      B.      The Objections Are Meritless ..........................................................................7

            1.      Appellants Are Contributing Nothing to the Settlement Payment ..............7

            2.      The Settlement Does Not Foreclose Payment of a Portion of the Additional Claim Amount to Appellants .........................................................8

            3.      No Claims Against Non-Settling Subsequent Transferees Have Been Extinguished ...............................................................................................9

CONCLUSION ..........................................................................................................................11

## TABLE OF AUTHORITIES

### CASES

Air Line Pilots Association v. American National Bank & Trust Co. (In re Ionosphere Clubs, Inc.),
156 B.R. 414 (S.D.N.Y. 1993)......................................................................................6

Cosoff v. Rodman (In re W.T. Grant Co.),
699 F.2d 599 (2d Cir. 1983)..................................................................................2-3

Debendictis v. Truesdell (In re Global Vision Products, Inc.),
09 Civ. 374, 2009 WL 2170253 (S.D.N.Y. July 14, 2009) ..........................................2

Duban v. Diversified Mortgage Investors,
87 F.R.D. 33 (S.D.N.Y. 1980) .....................................................................................10

Dzikowski v. Northern Trust Bank of Florida, N.A. (In re Prudential of Florida Leasing, Inc.),
478 F.3d 1291 (11th Cir. 2007) .............................................................................10, 11

Krys v. Official Committee of Unsecured Creditors of Refco Inc. (In re Refco Inc.),
505 F.3d 109 (2d Cir. 2007).................................................................................1, 2, 6

Liu v. Silverman (In re Liu),
166 F.3d 1200 (table), 1998 WL 890176 (2d Cir. 1998)...............................................6

Nellis v. Shugrue,
165 B.R. 115 (S.D.N.Y. 1994).................................................................................2, 6

Picard v. Katz,
11 Civ. 3605, 2011 WL 4448638 (S.D.N.Y. Sept. 27, 2011)......................................10

Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC,
454 B.R. 285 (Bankr. S.D.N.Y. 2011)..........................................................................8

In re Warner Communications Securities Litigation,
798 F.2d 35 (2d Cir. 1986).........................................................................................10

### STATUTES

11 U.S.C. § 550(d) ................................................................................................10, 11

This is an appeal from an order (the "Order") of the United States Bankruptcy Court for the Southern District of New York (Lifland, B.J.) (the "bankruptcy court").  Entered on September 22, 2011, the Order grants the motion of plaintiff/appellee Irving Picard for approval of the settlement (the "Settlement") of this adversary proceeding (the "Adversary Proceeding").  The Settlement resolves all of the claims asserted against the Tremont Defendants/Appellees[1] ("Tremont") and others by Mr. Picard, the trustee ("Trustee") appointed to liquidate the debtor, Bernard L. Madoff Investment Securities LLC ("BLMIS").  As shown below, the bankruptcy court properly approved the Settlement and the Order should be affirmed.

## STATEMENT OF THE ISSUES PRESENTED

1. Did the bankruptcy court correctly find that Appellants[2] lack standing to object to the Settlement given that they indisputably "do not hold a direct interest in the Debtor" and thus are not "directly and adversely affected pecuniarily [by the Settlement]"?  (Order (Dkt. No. 2, Item 18) at 3 (internal quotation and citations omitted).)

2. Did the bankruptcy court abuse its discretion in finding that the payment of $1 billion to the estate of BLMIS in Settlement of the Trustee's claims is adequate and in the best interests of the estate?  (Id. at 2.)

## STANDARD OF APPELLATE REVIEW

The bankruptcy court's ruling on standing is reviewed de novo.  See Krys v. Official Comm. of Unsecured Creditors of Refco Inc. (In re Refco Inc.), 505 F.3d 109, 116 (2d Cir. 2007). The bankruptcy court's determination to approve the Settlement and overrule Appellants'

---

[1] The Tremont Defendants/Appellees are Tremont Group Holdings, Inc., Tremont Partners, Inc., Tremont (Bermuda) Limited and Robert I. Schulman.

[2] The Appellants are Phoenix Lake Partners, L.P., Lakeview Investment, LP, 2005 Tomchin Family Charitable Trust, Edward White and Rigdon O. Dees, III.

1

objections "is reviewed 'extremely deferentially,' and 'should not be overturned unless its decision is manifestly erroneous and a clear abuse of discretion.'" Debendictis v. Truesdell (In re Global Vision Prods., Inc.), 09 Civ. 374, 2009 WL 2170253, at *3 (S.D.N.Y. July 14, 2009) (citations omitted); see also Nellis v. Shugrue, 165 B.R. 115, 123 (S.D.N.Y. 1994) ("My review of the bankruptcy court's approval of the extant settlement agreement is restricted to determining whether there was a clear abuse of discretion." (citations omitted)).  In that connection, a bankruptcy court will be deemed to have abused its discretion only if "'no reasonable man could agree with the decision' to approve a settlement." In re Global Vision, 2009 WL 2170253, at *3 (citation omitted).

## SUMMARY OF ARGUMENT

This appeal is, in a word, frivolous.  Appellants are investors in hedge funds that invested with BLMIS, a broker-dealer now in liquidation before the bankruptcy court.  As hedge fund investors who had no direct dealings with and are not creditors of BLMIS, Appellants indisputably have no direct claim against the estate of BLMIS, i.e., they have no direct right to receive any distribution from the estate as it is liquidated.  Consequently, under settled law of this Circuit, Appellants lack standing to maintain this appeal because, as strangers to BLMIS, they are not directly affected by the Order approving the Settlement, which will directly and materially benefit the estate and its creditors by adding $1 billion in cash to the coffers of the estate. See, e.g., In re Refco, 505 F.3d at 117-18 (affirming dismissal of appeal from settlement of adversary action).

Even if Appellants had standing, there still would be no doubt that the bankruptcy court had ample grounds for approving the Settlement and that Appellants' objections lack even a scintilla of merit.  Appellants do not even try to show, as they must to prevail, that the $1 billion Settlement payment is so grossly inadequate that it "'fall[s] below the lowest point in the range of reasonableness'" and thus disadvantages the estate. Cosoff v. Rodman (In re W.T. Grant Co.), 699

2

F.2d 599, 608 (2d Cir. 1983) (citation omitted).  Instead, they complain that the Settlement is unfair *to them* because it purportedly reduces the recovery they hope to receive indirectly from the estate through hedge funds managed by Tremont.  But as a matter of law, Appellants' purported interest in sharing in amounts that creditors of the estate – i.e., the hedge funds – may recover from the estate in the future provides no basis for objecting to the Settlement, much less establishes that an immediate Settlement payment of $1 billion to BLMIS is not in the best interests of the estate.

## STATEMENT OF THE CASE

### A. Nature of the Case

The Adversary Proceeding arises out of the pending liquidation of BLMIS.  Various hedge funds (the "Funds") managed by Tremont authorized BLMIS to invest substantially all or a portion of the Funds' assets in accordance with a specified investment strategy known as "split-strike conversion."  As the world now knows, Bernard Madoff stole those assets, saddling the Funds with more than $2 billion of net losses.

As a broker-dealer, BLMIS had various customers, including certain of the Funds, that maintained brokerage accounts directly with BLMIS.  The Funds invested with BLMIS through those accounts pursuant to the terms of various customer agreements the Funds entered into with BLMIS over a period of almost twenty years.

Following public exposure of Madoff's Ponzi scheme in December 2008, the bankruptcy court appointed the Trustee to oversee the liquidation of BLMIS (the "Liquidation Proceeding"). Following commencement of that proceeding, a number of Funds with brokerage accounts at BLMIS filed proofs of claim with the Trustee to recover their Madoff-related losses.  Thereafter, on December 7, 2010, the Trustee commenced the Adversary Proceeding to attempt to "claw back" approximately $2 billion in cash purportedly transferred from BLMIS to the Funds.  In his

3

complaint, the Trustee alleged that these transfers were avoidable and recoverable by the estate under the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa, et seq., and the New York Debtor and Creditor Law.  (See generally Compl. (Dkt. No. 2, Item 1).)

### B. Course of the Proceedings and Disposition in the Court Below

For more than eighteen months prior to commencement of the Adversary Proceeding, the parties explored the possibility of settling the Trustee's anticipated avoidance claims.  To that end, the Trustee conducted extensive informal discovery and counsel engaged in protracted arm's length negotiations.  The parties completed this process shortly after the Trustee filed his complaint, resulting in a Settlement that resolves all of the Trustee's claims against Tremont, the Funds and various entities and individuals affiliated with Tremont (together, the "Settling Defendants").

Pursuant to the Settlement, the Settling Defendants, other than Rye Select Broad Market Insurance Portfolio LDC ("Insurance LDC"), have agreed to pay $1 billion to the estate of BLMIS (the "Settlement Payment").[3]  Although not specified in the Settlement, the Settling Defendants (other than Insurance LDC) contemplate that the Settlement Payment will be funded principally by three of the Funds:  Rye Select Broad Market Fund, L.P. ("Broad Market"), Rye Select Broad Market Portfolio Limited ("Portfolio") and Rye Select Broad Market Prime Fund, L.P. ("Prime").  In exchange for the payment of $1 billion, the Trustee has agreed to release his claims against all of the Settling Defendants, to allow the customer claims totaling approximately $2 billion made by three of the Funds (and Insurance LDC) in the Liquidation Proceeding, and to increase the

---

[3] Insurance LDC, a Fund in liquidation in the Cayman Islands, has agreed to contribute an additional $25 million to the Settlement.

4

aggregate amount of the allowed customer claims of two Funds, Broad Market and Portfolio, by $800,000,000 pursuant to Section 502(h) of the Bankruptcy Code (the "Additional Claim Amount").  Thus, under the Settlement, four of the Funds collectively will become entitled to allowed customer claims of approximately $3 billion in the aggregate (the "Allowed Claims").

On July 28, 2011, the Trustee filed a motion with the bankruptcy court (the "Trustee Motion") seeking approval of the Settlement pursuant to Section 105(a) of the Bankruptcy Code, and Rules 2002(a)(3) and 9019(a) of the Federal Rules of Bankruptcy Procedure.  On September 6, 2011, Appellants filed objections to the Settlement even though they are not parties to the Settlement or the Adversary Proceeding, and are not customers or creditors of BLMIS.  Nevertheless, they claimed to have standing to object because they are investors in two Funds, Prime and Rye Select Broad Market XL Fund, L.P. (the "XL Fund"), and purportedly will be paying a portion of the $1 billion Settlement Payment.

On September 22, 2011, the bankruptcy court entered the Order granting the Trustee's Motion and approving the Settlement, finding it in the best interests of the BLMIS estate.  (See Order (Dkt. No. 2, Item 18).)  In the Order, the court explained that it had considered, among other things, "the complexity of the litigation and attendant expense, inconvenience, and delay" and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.  (Id. at 1.)  Based on its consideration of those factors, the court concluded that the "Settlement represents a complete, good faith compromise of the Trustee's claims, is above the lowest rung of reasonableness, and in fact offers significant value to the BLMIS estate[.]"  (Id. at 2.)  The court also overruled Appellants' objections to the Settlement, finding that as a threshold matter, Appellants lacked standing to object because as investors in the Funds who had no direct dealings with BLMIS, they lacked the requisite direct interest in the property of the estate.  (See id. at 2-3,

5

7.) The court further ruled that the objections lacked merit because they in no way undermined the court's conclusion that the Settlement was in the best interests of the estate. (See id. at 4-7.)

## ARGUMENT

**I.   APPELLANTS LACK STANDING TO APPEAL AND TO OBJECT TO THE SETTLEMENT**

As a threshold matter, Appellants lack standing to object to the Settlement and, thus, also lack standing to appeal. Tremont previously briefed this standing issue in the motion to dismiss the appeal it previously filed with this Court. (See Dkt. Nos. 5, 18.) In the interest of efficiency, Tremont incorporates herein by reference its briefs in support of that motion and, for the reasons stated therein, submits that the appeal should be dismissed for lack of standing.

**II.   THE BANKRUPTCY COURT PROPERLY OVERRULED APPELLANTS' OBJECTIONS AND APPROVED THE SETTLEMENT**

Even if Appellants had standing to appeal, the Order nevertheless should be affirmed because the Settlement is more than adequate and Appellants' objections are without merit.

**A.   The Applicable Standards**

When addressing a motion to approve a settlement, bankruptcy courts evaluate the fairness and reasonableness of the proposed settlement *to the debtor's estate*. See In re Refco, 505 F.3d at 119 ("[A] bankruptcy court's obligation is to determine whether a settlement is in the best interests of *the estate*." (emphasis in original)); Air Line Pilots Ass'n v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.), 156 B.R. 414, 427 (S.D.N.Y. 1993) (same), aff'd, 17 F.3d 600 (2d Cir. 1994). In making this determination, "a judge does not have to be convinced that the settlement is the best possible compromise or that the parties have maximized their recovery." Nellis, 165 B.R. at 123. Rather, the settlement need only reach "'the lowest point in the range of reasonableness.'" Liu v. Silverman (In re Liu), 166 F.3d 1200 (table), 1998 WL 890176, at *1 (2d Cir. 1998) (citation omitted).

Although Appellants repeatedly make the conclusory assertion that the Settlement is "unfair and inequitable," they proffer nothing to show that the $1 billion Settlement falls below the lowest point in the range of what is reasonable to the BLMIS estate. Rather, the gravamen of Appellants' objection is that the Settlement purportedly is unfair to the Funds in which they invested and, by extension, to Appellants themselves. According to Appellants, they will receive unfair treatment because the Funds with Allowed Claims purportedly will not equitably distribute amounts recovered on those claims to Appellants and other Fund investors. But as shown above, the alleged indirect impact of the Settlement on Appellants is irrelevant for purposes of assessing the reasonableness of the Settlement to the estate. And even if the alleged indirect impact had any relevance, Appellants' claims of unfairness are based on demonstrably erroneous assertions and fail to establish that the Settlement is "unfair" to them.

### B. The Objections Are Meritless

#### 1. Appellants Are Contributing Nothing to the Settlement Payment

In their opening brief ("Opening Brief" or "Open. Br." (Dkt. No. 17)), Appellants assert that the $1 billion Settlement Payment to be made to the estate will be funded by Appellants and other investors in the Prime and XL Funds. (See id. at 4, 8-9.) Appellants claim they are "aggrieved" by the Settlement because, "[d]espite the substantial contributions" to be made by Prime and XL investors, the Settlement allocates the entire Additional Claim Amount of $800 million to Broad Market and Portfolio, two funds in which Appellants did not invest. (See id. at 9.)

In fact, Appellants are contributing nothing to the Settlement. Indeed, it is undisputed that no provision of the Settlement requires Appellants to make any payment to the Trustee. In reality, nearly one hundred percent of the Settlement Payment will be paid by three Funds – Broad Market, Portfolio and Prime. And while one or more of the Appellants may be affected indirectly by any Settlement payment made by Prime, any such indirect impact would not establish, as Appellants

7

erroneously suggest, that *they* are making payments to fund the Settlement. As explained by Judge Lifland in rejecting a substantially identical contention made by hedge fund investors in a related proceeding not involving Tremont:

> As a foundational element, the Objecting Claimants do not have property interests in the Feeder Funds' assets entrusted with BLMIS by the Feeder Funds, which are separate legal entities structured as corporations, limited liability companies and limited partnerships in New York, Delaware, the Cayman Islands or the BVI.  Rather, the Objecting Claimants, who generally were either non-managing members or limited partners, purchased mere ownership interests in the Feeder Funds.  The cash that they used to make those purchases *became the sole property of the Feeder Funds*.

Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC, 454 B.R. 285, 295-96 (Bankr. S.D.N.Y. 2011) (emphasis in original) (collecting cases).

Here too, the Funds are investment companies, entities separate and distinct from Appellants, that are organized as limited partnerships or corporations under Delaware and Cayman law, respectively. Thus, as a matter of law, assets of the Funds contributed to the Settlement Payment are not assets of Appellants or any other investor in the Funds. Consequently, there is no basis, much less merit, to any objection based on the contention that Appellants are funding a portion of the Settlement Payment.

### 2. The Settlement Does Not Foreclose Payment of a Portion of the Additional Claim Amount to Appellants

Appellants further contend that the Settlement is unfair because even though Prime and XL purportedly are contributing to the Settlement, none of the Additional Claim Amount has been allocated to either Fund. (See Open. Br. (Dkt. No. 17) at 9.) In fact, XL will make no payment to fund the Settlement. While Prime *is* expected to contribute, Appellants' contention that the Settlement prohibits Prime's investors from sharing in the Additional Claim Amount is without basis in fact.

The distribution of amounts recovered by the Funds from the estate of BLMIS (the "Recovered Amounts") will be governed *both* by the Settlement approved by Judge Lifland *and* by another settlement approved by Judge Griesa (the "Investor Settlement") in consolidated litigation captioned In re Tremont Securities Law, State Law and Insurance Litigation, Master File No. 08 Civ. 11117 (TPG) (S.D.N.Y. filed Dec. 22, 2008).  The two settlements together create a three-step process for distributing the Recovered Amounts.  Under the first step, Recovered Amounts will be paid by the estate to Broad Market and Portfolio, as provided in the Settlement.  (See Settlement (Dkt. No. 2, Item 7, Ex. A) ¶¶ 5, 5(c).)  In the second step, under the Investor Settlement, Broad Market and Portfolio will be required to transfer all Recovered Amounts they receive to an escrow account.  (See Investor Settlement (Dkt. No. 2, Item 14, Ex. B) ¶¶ 2.15, 2.20, 2.21.)  And in the final step, Judge Griesa will determine how to allocate the Recovered Amounts held in escrow to all investors (including Appellants) in all Tremont-managed funds that had exposure to BLMIS.[4]  (See id. ¶¶ 2.23, 5.4, 5.5(c), 5.5(d).)  Nothing in the Settlement or the Investor Settlement forecloses Judge Griesa from approving a plan of allocation that provides for distribution of Recovered Amounts, including a portion of the Additional Claim Amount, to Appellants and other investors in Prime and XL.

### 3. No Claims Against Non-Settling Subsequent Transferees Have Been Extinguished

Appellants also object on the ground that the Settlement purportedly precludes the Trustee from continuing to pursue avoidance claims against various non-settling subsequent transferees of estate property listed on Exhibit A to the Settlement (the "Third Party Transferees").[5]  According

---

[4] Appellants' purported description of the distribution of the Recovered Amounts (Open Br. (Dkt. No. 17) at 18) is simply wrong.  Indeed, Judge Griesa has not yet approved any plan of allocation.

[5] In their Opening Brief, Appellants make passing reference to another of the objections made below – namely, the Settlement unfairly releases claims against Settling Defendants that purportedly are not

*(cont'd)*

9

to Appellants, these claims have been extinguished as a result of the "one-satisfaction rule" under Section 550(d) of the Bankruptcy Code.[6] (Open. Br. (Dkt. No. 17) at 13-14.) Appellants are wrong as a matter of law.

Section 550(d) prohibits the Trustee from "obtain[ing] twice the full value of a fraudulent transfer by recovering that value from both the initial transferee and a subsequent transferee." Dzikowski v. N. Trust Bank of Fla., N.A. (In re Prudential of Fla. Leasing, Inc.), 478 F.3d 1291, 1297 (11th Cir. 2007). Here, however, the statute is inapplicable because the Settlement does not operate to permit the Trustee to recover the same value twice from both the Settling Defendants and the non-settling Third Party Transferees.

In the complaint in the Adversary Proceeding, the Trustee alleged that the Funds received voidable transfers from BLMIS totaling $2.1 billion. (See generally Compl. (Dkt. No. 2, Item 1).) Of that amount, the Settlement provides for payment of $1.025 billion to the estate, and expressly reserves the Trustee's right to seek to recover the balance from Third Party Transferees. (See Settlement (Dkt. No. 2, Item 7, Ex. A) ¶¶ 2-4.) Even if the Trustee ultimately succeeds in recovering 100 percent of that balance, his aggregate recovery cannot and will not exceed $2.1

---

*(cont'd from previous page)*
    contributing to the Settlement. (See Open. Br. (Dkt. No. 17) at 3.) Appellants, however, nowhere attempt to explain in their brief why the bankruptcy court erred in overruling that objection. Consequently, the objection should be deemed abandoned. The objection is meritless in any event given that where, as here, the total settlement consideration is fair and reasonable, "the court is not required to supervise how the defendants apportion liability for that compensation among themselves." In re Warner Commc'ns Sec. Litig., 798 F.2d 35, 37 (2d Cir. 1986). Consequently, "'the release of noncontributing defendants through a settlement agreement is no reason for disapproving the compromise.'" Duban v. Diversified Mortg. Investors, 87 F.R.D. 33, 40 (S.D.N.Y. 1980) (citation omitted).

[6] Appellants also contend that these claims effectively have been extinguished by a ruling in Picard v. Katz, 11 Civ. 3605, 2011 WL 4448638 (S.D.N.Y. Sept. 27, 2011). (See Open. Br. (Dkt. No. 17) at 14.) Appellants, however, did not raise this argument below – and could not possibly have raised it because Katz was decided *after* Judge Lifland approved the Settlement. While Katz is irrelevant in any event, Appellants' belated objection based on Katz was never presented to Judge Lifland and thus is not properly before this Court on appeal.

billion, the total amount of voidable transfers alleged in the complaint.  Because there is no prospect of double recovery, neither the Settlement nor Section 550(d) creates any impediment to the Trustee's assertion of avoidance claims against Third Party Transferees.  See, e.g., In re Prudential, 478 F.3d at 1301-02.

## CONCLUSION

The Order of the bankruptcy court should be affirmed.

Dated:  New York, New York
        November 21, 2011

                              Respectfully submitted,

                              /s/ Seth M. Schwartz
                              Seth M. Schwartz (Seth.Schwartz@Skadden.com)
                              Jason C. Vigna (Jason.Vigna@Skadden.com)
                              SKADDEN, ARPS, SLATE,
                                MEAGHER & FLOM LLP
                              Four Times Square
                              New York, New York 10036
                              (212) 735-3000

                              Attorneys for Defendants/Appellees
                                Tremont Group Holdings, Inc.,
                                Tremont Partners, Inc.,
                                Tremont (Bermuda) Limited
                                and Robert I. Schulman